TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
BRENDA N. GALVÁN (Cal. Bar No. 296456)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: 213-894-0715
     Facsimile: 213-894-0141
     E-mail:    brenda.galvan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:23-cr-652-HDV |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT MANUEL BASMADJIAN'S EX PARTE APPLICATION TO DISMISS CASE WITH PREJUDICE |
| v. | |
| MANUEL BASMADJIAN, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Brenda N. Galván, hereby files its Opposition to Defendant's Ex Parte Application for Order Dismissing Case with Prejudice.

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 12, 2026            Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

         /s/
BRENDA N. GALVÁN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Manuel Basmadjian is detained by the United States Immigration and Customs Enforcement ("ICE") in immigration custody pursuant to the express terms of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq.  Defendant now applies ex parte, instead of through the proper channels, to dismiss the indictment. Defendant asks the Court to ignore the INA because the Court previously found that defendant should be released on bond pursuant to the Bail Reform Act, a wholly separate statute, and dismiss the Indictment.  Because defendant misused the ex parte process, his request should be denied.

Defendant's motion also fails on the merits because, as explained by the Ninth Circuit, "detention of a criminal defendant pending trial pursuant to the Bail Reform Act and detention of a removable alien pursuant to the Immigration and Nationality Act are separate functions that serve separate purposes and are performed by different authorities." United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019) (cleaned up).  Accordingly, this Court should deny defendant's legally baseless request for dismissal.

Defendant's motion also fails because difficulties in scheduling legal visits with a defendant (whether in immigration custody or pretrial criminal detention) are insufficient to establish a claim of inadequate access to counsel warranting dismissal when other remedies are available, such as a continuance and/or the transport of defendant from Adelanto to Los Angeles so that defendant's attorney can meet with him, as described below.  See United States v. Lewis, 873 F.2d 1279, 1280 (9th Cir. 1989).

## II. STATEMENT OF FACTS

### A. Charges Against Defendant and Detention Status

Defendant is a Soviet Armenian passport holder and does not have a recognized country of origin. He is charged in this case with: two counts of Possession with Intent to Distribute Methamphetamine in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); two counts of Possession with Intent to Distribute Heroin in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(C); Carrying a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).

Defendant first appeared in this Court on October 22, 2024, and was released on bond following an August 11, 2025 Reconsideration of Bond hearing.

Following defendant's release on August 12, 2025, defendant was taken into the custody of the U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") due to an active final order of removal and detainer. The prosecution team did not receive notification that defendant was taken into the custody of the ERO until September 4, 2025.[1]

According to ICE's inmate locator website and confirmation from the Assistant Field Office Director of the Adelanto ICE Processing Center, defendant is, as of the time of this filing, presently detained at the Adelanto Detention Facility in Adelanto, California.

---

[1] The assigned prosecution team had not been notified that ICE was looking for, or intended to detain, defendant.

1  On October 16, 2025, the Court heard defendant's Motion to
2 Suppress.  (Dkt. 68.)  On November 25, 2025, the Court denied
3 defendant's Motion to Suppress.  (Dkt. 71.)  On February 12, 2026,
4 defendant filed an Ex Parte Application to Dismiss this case with
5 prejudice.  (Dkt. No. 72.)  Trial is set for March 17, 2026.

### B.   Adelanto's Attorney Visitation Policy

7  Defendant is detained in immigration custody at Adelanto.
8 Adelanto is approximately 85 miles from the Los Angeles office of the
9 Federal Public Defender in the Central District of
10 California.  Criminal defense attorneys are permitted to see their
11 clients at Adelanto by appointment or walk-in.  (See Declaration of
12 Do Cane Langill ("Langill Decl.") at ¶ 10.)  Attorneys may walk-in
13 and are allowed to visit 24 hours a day, seven days a week, excluding
14 count times.  (Id. at ¶ 10.)  Walk-ins are allowed with a valid
15 Driver's License and a valid bar card.  (Id.)  Attorneys can also
16 contact their clients through video appointments and can be scheduled
17 in advance through ERO eFile or through calling the Appointment
18 Department.  (Id. at ¶ 12-13.)

### III. LEGAL STANDARD

20  Congress enacted the Bail Reform Act ("BRA"), 18 U.S.C. § 1342,
21 to "give the courts adequate authority to make release decisions that
22 give appropriate recognition to the danger a person may pose to
23 others if released...." United States v. Salerno, 481 U.S. 739, 741
24 (1987).  After a hearing, if a judicial officer finds that "no
25 condition or combination of conditions will reasonably assure the
26 appearance of the person as required and the safety of any other
27 person and the community, such judicial officer shall order the
28 detention of the person before trial."  18 U.S.C. § 3142(e)(1).

3

The INA, 8 U.S.C. § 1101, et seq., charges the United States Secretary of Homeland Security with the administration and enforcement of the INA and other immigration laws. Under the INA, ICE is authorized or, in certain cases, required, to detain individuals who are subject to removal. See 8 U.S.C. §§ 1226(a)(1) (authorizing discretionary detention pending removal); 1226(c) (requiring mandatory detention based on prior criminal convictions); 1231(a)(2) (requiring mandatory detention based on final order of removal).

## IV. ARGUMENT

### A. Defendant Provides No Basis for His Ex Parte Application and the Court Should Deny It on That Basis

Because the relief sought required notice and an opportunity to be heard, it should have been brought as a motion rather than an ex parte application.[2] Defendant has not shown that he would be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that he is "without fault in creating the crisis that requires ex parte relief, or that crisis occurred as a result of excusable neglect." Mission Power Eng'g Co. v. Con'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995). In fact, defendant gives no rationale for styling this motion as an ex parte application. Although defense counsel was informed on January 26, 2026, that defendant would be transported back to Adelanto (Kennedy Decl. ¶ 27), and therefore knew that her claims of inadequate access to counsel were ripe, defendant failed to file a motion to dismiss

---

[2] The government responds to the merits of defendant's ex parte application below, but in light of its foreshortened time to respond, the government requests leave to supplement its briefing if needed.

4

before the motion deadline in this case. (Kennedy Decl. ¶ 28.) See Court's Criminal Standing Order at 5.

### B. ICE Has Discretionary Authority to Detain Defendant

The Court should also deny defendant's motion on the merits. The Bail Reform Act ("BRA") governs detention in criminal cases. See 18 U.S.C. §§ 3142 & 3143. The Immigration and Nationality Act ("INA"), governs detention of noncitizens in civil removal proceedings. See 8 U.S.C. §§ 1226, 1231. They are "different statutory and regulatory regime[s]." United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). "Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." United States v. Vasquez-Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019). Accordingly, "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination." United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018). "No court of appeals . . . has concluded that pretrial release precludes pre-removal detention," United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (following Veloz-Alonso and Vasquez-Benitez), because nothing in the BRA prevents DHS/ICE "from exercising its independent statutory authority to detain an arriving noncitizen pending removal," United States v. Ventura, 747 F. App'x 20, 22 (2d Cir. 2018).

Defendant's arguments premised on United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012), fail because Trujillo-Alvarez is not binding precedent, ignores the independent detention authority prescribed by the INA, and is contrary to several circuit

court decisions.[3]  See United States v. Lett, 944 F.3d 467, 471 (2d Cir. 2019) ("[T]he BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes."); United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (pre-trial release does not preclude pre-removal detention, and the BRA and INA do not conflict); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018) ("ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination."); see also United States v. Pacheco-Poo, 952 F.3d 950, 953 (8th Cir. 2020); United States v. Urbina-Escoto, 2020 WL 6147024 (W.D. Wash. Oct. 20, 2020).

In United States v. Lett, the defendant was a citizen of Trinidad and Tobago and was arrested at John F. Kennedy International Airport after Customs and Border Protection ("CBP") found 2.12 kilograms of cocaine in his suitcase.  944 F.3d at 469.  "CBP paroled Lett into the United States for criminal prosecution and transferred him to the custody of the Bureau of Prisons ("BOP"), and the government filed a criminal complaint charging Lett with importing cocaine . . . ."  Id.  Meanwhile, ICE lodged an immigration detainer against him.  Id.  Ultimately, the district court ordered Lett's release pending his criminal case.  See id.  Accordingly, ICE acted on the lodged detainer and took Lett into ICE custody following his release from BOP, and initiated removal proceedings.  See id.  "Lett filed a motion to dismiss the indictment in his criminal case,

---

[3] It does not appear the Ninth Circuit Court of Appeals has ruled on this issue.

6

arguing that his continued detention by ICE violated the BRA." Id. The district court dismissed the Indictment holding that the government needed to decide whether to criminally prosecute or remove Lett but could not proceed simultaneously. See id. at 469-470. The Second Circuit vacated this decision, finding that the BRA and the INA "serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention," and therefore "the government's authority to detain an alien pursuant to the INA" does not disappear merely because he cannot be detained under the BRA pending his criminal trial. See id. at 470.

Similarly, here, ICE took defendant into ICE custody pursuant to its detention authority under the INA. More specifically, ICE has discretionary authority to detain defendant pending his removal proceedings. The government is not required to choose what proceedings to pursue and may pursue both removal and criminal proceedings simultaneously.

In addition, the facts in Trujillo-Alvaraz are plainly distinguishable. In Trujillo-Alvarez, the District Court repeatedly highlighted the apparent coordination between the United States Attorney's Office and ICE and appeared concerned that such coordination effectively resulted in the executive branch circumventing the BRA by ensuring that the defendant, Alvarez-Trujillo, was detained pending trial. For example, in Trujillo-Alvarez, the District Court highlighted the following: (1) on the same day that ICE arrested Alvarez-Trujillo and placed him in ICE custody, an ICE deportation officer presented the case against Alvarez-Trujillo to the United States Attorney's Office for prosecution for illegal reentry in violation of 8 U.S.C. § 1326(a);

7

1  (2) one day before the United States Attorney's Office obtained an
2  indictment against Alvarez-Trujillo, the same ICE deportation officer
3  caused an Immigration Detainer—Notice of Action (an "ICE detainer")
4  to be lodged against Alvarez-Trujillo; (3) after the United States
5  Attorney's Office filed the indictment one day later, ICE transferred
6  Alvarez-Trujillo to the U.S. Marshals Service to appear for his
7  arraignment; (4) the same ICE deportation officer who caused the ICE
8  detainer to be lodged also served as the prosecution's case agent and
9  sat at counsel's table next to the Assistant United States Attorney
10 during the detention hearing, and (5) after the magistrate judge
11 released Alvarez-Trujillo under the BRA, ICE agents took Alvarez-
12 Trujillo back into ICE custody and transported him out of the
13 District of Oregon to an ICE detention center in Tacoma, Washington.
14 Trujillo-Alvarez, 900 F. Supp 2d 1167, 1171-72.
15     By contrast, in this case, there is no overlap or coordination
16 between the criminal proceedings and removal proceedings against
17 defendant.  For example, unlike the facts in Trujillo-Alvarez,
18 (1) defendant's alleged crimes have nothing to do with his
19 immigration status, (2) no ICE agent or deportation officer had or
20 has any role in defendant's criminal proceedings, (3) the Department
21 of Homeland Security took defendant into custody for removal
22 proceedings on or around August 12, 2025 – and did not notify the
23 prosecution team that defendant would be taken into custody for
24 removal proceedings, and (5) there was no coordination between the
25 prosecution team and ICE to place defendant in removal proceedings.
26     For the avoidance of doubt, the government may pursue both
27 removal and criminal proceedings simultaneously even if there were
28 some level of coordination between the United States Attorney's

8

Office and ICE.  But Trujillo-Alvarez is particularly inapplicable to this case where the criminal proceedings and the removal proceedings are completely separate without any overlapping facts or allegations.

### C. Dismissal Is Inappropriate without a Showing of Injury and Prejudice

The Court should also deny defendant's request for dismissal of the Indictment because defendant has not demonstrated inadequate access to counsel.  The fact that Adelanto ICE Processing Center is a farther driving distance than the Metropolitan Detention Center is not a sufficient basis to dismiss the indictment.  Courts have rejected defendant's argument that the length of travel constitutes deprivation of counsel, including the Ninth Circuit.  See United States v. Lewis, 873 F.2d 1279, 1280 (9th Cir. 1989) (finding that defendant was not denied access to counsel because the 120-mile distance between him and his counsel did not actually or constructively deny him the assistance of counsel altogether); Ekene v. Cash, 2012 WL 4711723, at *12 (C.D. Cal. May 14, 2012)(citing United States v. Lewis); Pino v. Dalsheim, 558 F. Supp. 673, 675 (S.D.N.Y. March 8, 1983)(noting that several courts have noted that "travel inconvenience of an attorney. . . . does not reach the level of a constitutional violation").

Additionally, the government has already coordinated with ERO to ensure defendant's transportation from ICE custody to criminal proceedings in this matter and will continue to do so.  Cf. United States v. Santos-Flores, 794 F.3d 1088, 1090 (9th Cir. 2015) (holding that a district court may "craft an appropriate remedy" if immigration detention "jeopardizes the district court's ability to try him").  Indeed, defendant was transported from Adelanto to attend

the hearing on his motion to suppress. As a result, a request to dismiss the criminal case at this time is premature. See, e.g., United States v. Yostin Sleiker, et al., 5:25-mj-00140-KK, Criminal Minutes, Dkt. 26 (C.D. Cal. Apr. 8, 2025) (deferring ruling on an emergency motion for release from immigration custody after being released on bond under the Bail Reform Act).

Additionally, additional remedies are available. The Ninth Circuit has held that "[i]f the government, by placing [the defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." See United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015). Under the Speedy Trial Act, the last date by which defendant's trial must commence is July 4, 2026, based on excludable time in this case, including for the resolution of defendant's Motion to Suppress. The time between the instant filing and its resolution will also be excludable time.

In this case, defendant actively possessed narcotics, namely heroin and methamphetamine, for the purposes of distribution, in addition to a firearm, activities that have caused and continue to cause devastation and danger to the community. Dismissing the Indictment is not appropriate here in light of the foregoing and would not advance the ends of justice.[4]

---

[4] The government is aware of at least two recent cases where a District Court dismissed an indictment after a criminal defendant was taken into immigration custody, United States v. Parias, No. 25-cr-904-FMO (C.D. Cal. Dec. 27, 2025), Dkt. 76 and United States v. Zambrano, No. 23-00524-DMG (C.D. Cal. Feb. 5, 2026), Dkt. 633. While the government disagrees with the Courts' holdings and reasoning, this case is nevertheless readily distinguishable from Parias and Zambrano where the District Court found specific prejudice to defendants.

Dated: February 12, 2026          Respectfully submitted,

                                          TODD BLANCHE
                                          Deputy Attorney General

                                          BILAL A. ESSAYLI
                                          First Assistant United States Attorney

                                          ALEXANDER B. SCHWAB
                                          Assistant United States Attorney
                                          Acting Chief, Criminal Division

                                                /s/
                                          BRENDA N. GALVÁN
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA